UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:21-CV-00266-CRS

**TINA S.**                                                                                    **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI,**
*Acting Commissioner of Social Security*[1]                             **DEFENDANT**

## REPORT AND RECOMMENDATION

The Commissioner of Social Security denied Tina S.'s ("Claimant's") applications for disability insurance benefits and supplemental security income benefits. Claimant presently seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). Both Claimant (DN 20) and the Commissioner (DN 23) have filed a Fact and Law Summary. The District Judge referred this case to the undersigned United States Magistrate Judge for consideration and preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (DN 15).

### I. Background

Claimant is in her late forties, has a high school education, and previously worked as a cook, van driver, home health aide, and cleaner. (Tr. 27). She applied for supplemental security income benefits and disability insurance benefits on September 6, 2016. (Transcript, hereinafter "Tr.", 325, 332). She alleged disability beginning on April 1, 2012 due to back issues, borderline personality disorder, bi-polar disorder type 2, social anxiety, chronic depression, and detached retina. (Tr. 355, 359). Claimant later amended her alleged onset date to September 6, 2016. (Tr.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted for Andrew Saul as Defendant in this case.

70). Her applications were denied initially (Tr. 185, 192) and denied again on reconsideration (Tr. 201, 208).

At Claimant's request, Administrative Law Judge D. L. Pickett ("ALJ Pickett") conducted a hearing in Louisville, Kentucky, on October 23, 2018. (Tr. 68-69). Two months later, ALJ Pickett issued an unfavorable decision. (Tr. 173). Among other findings, ALJ Pickett determined Claimant could perform a range of "light work" with specific functional limitations. (Tr. 168). Claimant administratively appealed ALJ Pickett's decision. (Tr. 269-70).

The Appeals Council vacated ALJ Pickett's decision and remanded the case to an Administrative Law Judge to further evaluate Claimant's mental impairments in accordance with 20 CFR 404.1520a and 416.920a and to further consider Claimant's maximum residual functional capacity during the entire period at issue. (Tr. 181-82). In relation to ALJ Pickett's limiting Claimant to "low stress work," the Appeals Council's remand directed the ALJ to articulate Claimant's ability to understand, carry out, and remember simple instructions; to appropriately respond to supervision, coworkers, and usual work situations; and to deal with changes in the routine work setting. The Appeals Council further instructed the ALJ to assess claimant's residual functional capacity under Social Security Ruling 96-8p, which for individuals with visual impairment requires consideration of "such work-related functions as working with large or small objects, following instructions, or avoiding ordinary hazards in the workplace." SSR 96-8P, 1996 WL 374184, at *6 (July 2, 1996).

ALJ Pickett convened another hearing on Claimant's behalf on May 6, 2020. (Tr. 36-37). With Claimant's consent the hearing was conducted telephonically due to the COVID-19 pandemic. (Tr. 37). Claimant, her attorney, and an impartial vocational expert participated. (*Id.*). During the hearing, Claimant testified to the following. She is currently 270 pounds and has lost

approximately 30 pounds since filing her applications for benefits. (Tr. 40). She drives only occasionally because she is almost blind in her right eye and has trouble with depth perception. (Tr. 41). Claimant has had several procedures on her eyes, including two retinal repairs and cataract surgery on her right eye and laser surgery on her left eye. (Tr. 43).

As to her mental health conditions, Claimant testified she sees a nurse practitioner every three months and takes medication. (Tr. 44). These medications make her tired and affect her balance. (*Id.*). Other issues Claimant complains of include headaches, diabetes, back pain, panic attacks, difficulty sleeping, and diarrhea. (Tr. 43-46). She lives with her father and brother. (Tr. 48). Her father cooks her meals. (*Id.*). Claimant does her own laundry every three or four months with difficulty. (*Id.*).

On May 27, 2020, ALJ Pickett issued a second unfavorable decision. (Tr. 28). He applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Claimant has not engaged in substantial gainful activity since September 6, 2016, her amended alleged onset date. (Tr. 18). Second, Claimant has the following severe impairments: degenerative disc disease, obesity, status-post eye surgery for cataracts and detached retinas, affective disorder, anxiety disorder, and personality disorder. (Tr. 19). Claimant also has the following non-severe impairments: headaches, diabetes mellitus, and hypertension. (*Id.*).

Third, none of Claimant's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (*Id.*). Between the third and fourth steps, ALJ Pickett found Claimant has the residual functional capacity ("RFC") to perform medium work with the following limitations:

> Claimant is able to climb ramps and stairs frequently. The claimant is able to climb ladders, ropes, and scaffolds occasionally. The claimant is able to stoop frequently.

3

> The claimant should perform work that allows for vision with only one eye (monocular vision). The claimant is able to understand, remember and carry out simple instructions with little requirements for independent judgment or decision making with minimal variation. The claimant is able to perform this work for two-hour segments over an eight-hour workday for five days a week. The claimant is capable of tolerating occasional contact with supervisors, coworkers, and the general public occasionally. The claimant can adapt to the expected and familiar changes and pressures of a routine work setting.

(Tr. 21-22). Fourth, Claimant is unable to perform any past relevant work. (Tr. 27). Fifth and finally, considering Claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy she can perform. (*Id.*).

Based on this evaluation, ALJ Pickett concluded Claimant has not been under a disability, as defined in the Social Security Act, since her alleged onset date of September 6, 2016, through the date of his decision. (Tr. 28). Claimant sought relief from the Appeals Council, which declined review. (Tr. `1). At that point, ALJ Pickett's denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of

credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993).  The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

## III. Analysis

Claimant challenges several aspects of ALJ Pickett's residual functional capacity determination. A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). Put otherwise, the RFC is the most a claimant can do despite their physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ bases their RFC determination on "all of the relevant medical and other evidence" in the case record. *Id.* (a)(3). This requires the ALJ to evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

### A. ALJ Pickett's Analysis of the Opinion Evidence from Claimant's Nurse Practitioners

Claimant first argues ALJ Pickett erred in discounting the opinions of her three treating nurse practitioners: Amanda Medley, Nancy Williams, and Shelbi Navarette. (DN 20-1, at PageID

# 889-90).  The regulations applicable to claims for disability benefits filed on or after March 27, 2017, i.e., the new regulations, changed the way the Commissioner considers medical opinion evidence. Because Claimant's applications were protectively filed before March 27, 2017, the "old regulations" apply. The old regulations established a hierarchy of acceptable medical source opinions. *Hollon v. Comm'r of Soc. Sec.*, 142 F. Supp. 3d 577, 582 (S.D. Ohio 2015). Treating physicians top the hierarchy. *Id.* The so-called "treating physician rule" requires a treating physician's opinion be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record. 20 C.F.R. § 404. 1527(c)(2). ALJs are required to give "good reasons" for the weight assigned to a treating source's medical opinion. *Id.*  Under the old regulations, "only 'acceptable medical sources' [could be] considered treating sources . . . whose medical opinions may be entitled to controlling weight." Social Security Ruling 06-03p, 2006 WL 2329939, at *2 (citing 20 C.F.R. § 404.1527(c)(2)).

Examining physicians, who often see and examine a claimant only once, are next in the hierarchy, followed by non-examining physicians' opinions at the bottom. *Hollon*, 142 F. Supp. 3d at 582. Opinions from non-treating sources, like examining or non-examining physicians, are never assessed for controlling weight; rather, they are evaluated using the factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These factors include the examining relationship (or lack thereof), specialization of the physician, consistency of the medical opinion with the record, and supportability of the opinion. 20 C.F.R § 416.927(c)(1)-(6). An exhaustive factor-by-factor analysis is not required to comply with the regulations. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). APRNs are not considered acceptable medical sources under

6

the old regulations. Opinions from APRNs, therefore, are assessed using the non-exhaustive factors listed above. *See Casey v. Saul*, No. 5:18-CV-00185-LLK, 2019 WL 5654345, at *2 (W.D. Ky. Oct. 31, 2019).

In weighing the opinion evidence of record, ALJ Pickett addressed the three nurse practitioners' opinions together. (Tr. 26). Referring to these APRNs as "treating physicians," ALJ Pickett afforded their medical source statements "little weight" because their reports "indicate extreme limitations that are not consistent with the conservative, limited treatment and improvement documented within the treatment notes, as well as normal findings." (*Id.*).

Claimant argues ALJ Pickett's one sentence analysis of these three opinions falls woefully short of the level of assessment required by the regulations. While recognizing that APRNs did not qualify as "acceptable medical sources" under the regulations as of her filing date, Claimant maintains ALJ Pickett was still required to evaluate the APRN opinions "on key issues such as impairment severity and functional effects, along with the other evidence of file." (*Id.* (quoting SSR 06-03P)). Claimant takes particular issue with ALJ Pickett's reliance on her "conservative treatment" because he did not consider her "clearly documented grounds for gaps in pursuing treatment," including her social phobia, agoraphobia, anxiety disorder, nervousness around people, and panic attacks when she sees doctors and gets important phone calls. (*Id.* at PageID # 891-92). Claimant asserts if ALJ Pickett had properly credited these APRN opinions as internally consistent and consistent with other record evidence, his decision would not have been supported by substantial evidence. (*Id.* at PageID # 896).

The Commissioner responds ALJ Pickett evaluated the opinion evidence of record as required by the regulations and provided compelling justifications for his findings. (DN 23, at PageID # 918-19). Though admitting ALJ Pickett's evaluation of Nurse Williams and Nurse

Medley's opinions was brief, the Commissioner explains ALJ Pickett offered support for this evaluation throughout the decision. (*Id*. at PageID # 920). The Commissioner claims that by robustly discussing Claimant's psychiatry appointments, her consultative psychological exam, and her primary care appointments, ALJ Pickett provided substantial evidence for affording little weight to Nurse Medley and Nurse Williams' extreme opinions. (*Id.*). As for Nurse Navarette's opinion, the Commissioner notes there is no evidence she ever met or treated Claimant and her name is only found on blood results from April 2017. The Commissioner states any error in ALJ Pickett's treatment of Nurse Navarette's opinion is inconsequential since she is essentially a stranger to the Claimant. (*Id.*).

Despite ALJ Pickett's grouping of these opinions, the Court will review his analysis for each APRN's opinion individually. APRN Williams partially completed a Medical Assessment of Claimant's Ability to Do Work-Related Activities (Mental) on April 19, 2017. (Tr. 635-36). APRN Williams checked boxes indicating Claimant was "severely limited" in the following categories: her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to ask simple questions or require assistance; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; the ability to respond appropriately to changes in the work setting; and the ability to deal with work stresses. (*Id.*).

ALJ Pickett's decision to afford APRN Williams' opinion little weight is supported by substantial evidence. He explicitly considered that APRN Williams' opined restrictions were inconsistent with treatment notes in the record. Earlier in his RFC analysis, ALJ Pickett discussed

Claimant's progress while treating with APRN Williams. (Tr. 24-25). ALJ Pickett noted after one month of APRN Williams prescribing medication, Claimant had reported some improvement, and by September of 2017 Claimant had reported significant improvement. (*Id.*). Claimant's documented stability while taking medication conflicts with APRN Williams' extreme limitations. Similarly, APRN Williams' findings of "severe limitation" in Claimant's Medical Assessment are not supported by her objective examination notes. Though she observed Claimant appearing sad at times, with positive evidence of anxiety and depressed mood, APRN Williams also frequently observed Claimant as friendly and communicative, having no signs of attentional difficulties, and having intact judgment and insight. (Tr. 655-66; 658-59; 662-63; 665).

ALJ Williams' extreme limitations are also not supported by other evidence in the record. Records from Dr. Ahmed, Claimant's primary care physician, reflect that while Claimant was treating with APRN Williams, she was stable on her medication and that Seroquel prescribed by APRN Williams helped her mood. (Tr. 643; 646). Several months after Claimant stopped treating with APRN Williams, she began treating with another provider, Samantha Richards, who consistently noted Claimant was stable, functioning well, and had euthymic mood. Richards also repeatedly noted Claimant's current medication regimen was effective and tolerated with no reported side effects. (Tr. 758; 764; 768; 770). Even on occasions where Claimant presented as anxious or depressed, Richards observed Claimant as friendly and communicative, with no signs of attentional difficulties, with insight and judgment intact, and with no gross behavioral abnormalities. (Tr. 766, 770).

The Court further considers that APRN Williams' check-box assessment contains no analysis supporting Claimant's allegedly severe limitations. ALJ Pickett's RFC analysis, when

read as a whole, provides substantial evidence for his discounting of APRN Williams' unsupported and inconsistent medical opinion.

The same conclusions apply to ALJ Pickett's analysis of APRN Amanda Medley's "Mental Impairment Medical Source Statement" completed on April 3, 2020. (Tr. 790). APRN Medley treated Claimant throughout 2019. Though APRN Medley's statement indicates Claimant does well with medications, she opined extreme limitations as to Claimant's ability to perform unskilled work. (Tr. 793). For instance, APRN Medley found Claimant had poor or no ability to "work in coordination and proximity to others without being unduly distracted" and to "complete a normal workday and workweek without interruptions from psychologically based symptoms." (*Id.*). APRN Medley further found Claimant would often have deficiencies of concentration persistence or pace resulting in failure to complete tasks in a timely manner and would have repeated episodes of deterioration or decompensation in work or work-like settings, which would require Claimant to withdraw from the situation or to experience exacerbation of signs and symptoms. (Tr. 794). APRN Medley noted Claimant's impairments would cause her to miss work about three times a month. (Tr. 792).

Again, ALJ Pickett considered the consistency of APRN Medley's opinion with other evidence in the record, specifically improved documentation within treatment notes. As discussed above, records from Claimant's treatment with APRN Williams and Samantha Richards demonstrate Claimant's improvement and stability on medication. Moreover, APRN Medley's treatment notes, discussed by ALJ Pickett earlier in his RFC analysis, do not support the extreme limitations from her Medical Source Statement. (Tr. 25). Records from September and December of 2019 reflect APRN Medley observing Claimant with no apparent signs of anxiety, with no depression or mood elevation, with normal attention span, and intact insight, judgment, and

associations. (Tr. 770, 772). Despite reporting some anxiety during her September 2019 visit with APRN Medley, Claimant otherwise indicated "things [were] going well and "her medications [were] working well." (Tr. 770). In December of 2019, Claimant again reported "things [were] going okay," that she felt "pretty even," and "her medications [were] working well." (Tr. 772). None of Claimant's subjective statements to APRN Medley or APRN Medley's objective observations support APRN Medley's extreme limitations on Claimant's ability to work in proximity with others without distraction and ability to concentrate and persist to timely complete tasks. ALJ Pickett's discounting of APRN Medley's opinion, accordingly, is supported by substantial evidence in the record and suffices under the old regulations.

Lastly, APRN Shelbi Navarette completed a Physical Capacities Evaluation for Claimant on April 11, 2017 addressing limitations resulting from Claimant's alleged lower back pain. (Tr. 632-33). APRN Navarette opined Claimant can stand/walk less than two hours in an eight-hour workday, sit about two hours in an eight-hour workday, never crawl, and never climb. (Tr. 633). She also checked boxes indicating Claimant would need to either sit quietly to rest or lie down at unpredictable intervals during a work shift two times a day and Claimant's impairments would require about one absence from work a month. (*Id.*).

Claimant maintains this assessment is consistent with the record based on diagnostic testing from December of 2017 revealing multilevel degenerative disc disease and facet osteoarthritis, Consultative Examiner Anthony Karam's opinion that Claimant could lift and carry 10 lbs frequently and 20 lbs occasionally, and Claimant's hearing testimony that she lies down off-and-on all day, can stand or walk for only two to three minutes, can only sit for 15 minutes before needing to move. (DN 20-1, at PageID # 895). But Claimant's citation to some evidence in the record supporting APRN Navarette's opined restrictions does not automatically render ALJ

11

Pickett's conclusions unsupported. Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993).

Critically, ALJ Pickett discussed the evidence Claimant cites to earlier in his RFC determination. (Tr. 23). ALJ Pickett described how during Dr. Karam's consultative exam, Claimant demonstrated full range of motion in her lumbar spine and joints, normal gait, and muscle strength of five out of five. (Tr. 22 (citing Ex. 5F)). He noted Claimant's reports of increased low back pain in March and April of 2017 but emphasized Claimant's refusal of physical therapy and a general physical exam without abnormal findings. (*Id.* (citing Ex. 9F, 13F). ALJ Pickett further referenced imaging from December of 2017 revealing only minimal scoliosis and mild degenerative changes. (*Id.*). Also mentioned by ALJ Pickett were records from April of 2018 to January of 2020, reflecting Claimant's ability to stand and walk without difficulty, normal gait, normal range of motion, and presenting with no acute distress. (*Id.* (citing Exs. 16F, 17F, 18F, 21F)). ALJ Pickett's determination that Dr. Navarette's opinion was inconsistent with other evidence in the record, including normal findings, is supported by substantial evidence.

Albeit brief, ALJ Pickett's analysis of weight for Claimant's three APRN opinions, along with his findings elsewhere in the RFC, permit the Court to follow his reasoning. The Court does not recommend relief on this claim.

### B. ALJ Pickett's Assessment of Claimant's Subjective Statements

Within her arguments regarding the weight ALJ Pickett afforded to the APRN opinion evidence, Claimant asserts ALJ Pickett erred by failing to inquire into possible reasons for her only pursuing conservative treatment. Claimant relies on Social Security Ruling 16-3p to allege ALJ Pickett did not consider her "clearly documented grounds for gaps in pursuing treatment,"

including her social phobia, agoraphobia, anxiety disorder, nervousness around people, and panic attacks when she sees doctors and gets important phone calls. (*Id.* at PageID # 891-92). The Commissioner argues the ALJ reasonably concluded Claimant's subjective complaints were not fully believable when contrasted with her conservative treatment, generally positive responses to medication, and often normal clinical signs. (DN 23, at PageID # 927).

In assessing an individual's RFC, the ALJ must consider the subjective allegations of the claimant and make findings. 20 C.F.R. § 416.929 (2016); SSR 16-3p, 81 Fed. Reg. 14,166 (Mar. 16, 2016). A claimant's statement that he or she is experiencing pain or other symptoms will not, taken alone, establish that he or she is disabled; there must be medical signs and laboratory findings that show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged. 20 C.F.R. § 416.929(a)-(b). If such an impairment exists, the ALJ will then evaluate the intensity and persistence of the claimant's symptoms in order to determine his or her capacity for work based on a consideration of all available evidence. *Id.* § 416.929(c).

In doing so, the ALJ will not solely consider the objective medical evidence. The ALJ will also consider a number of factors, including the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms and any treatment, other than medication, the claimant receives or has received for pain or other symptoms. *Id.* § 416.929(c)(3)(i)-(vii); SSR 16-3p, 81 Fed. Reg. at 14,169-70. A claimant's pain and other symptoms "will be determined to diminish [his or her] capacity for basic work activities ... to the extent that [his or her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(c)(4).

The Sixth Circuit has long recognized that "ALJs must be careful not to assume that a patient's failure to receive mental-health treatment evidences a tranquil mental state" because "[f]or some mental disorders the very failure to seek treatment is simply another symptom of the disorder itself." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009). Put otherwise, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Blankenship v. Bowen,* 874 F.3d 1116, 1124 (6th Cir. 1989). SSR 16-3p, issued by the Social Security Administration in October of 2017, encapsulates the Sixth Circuit's holdings in *White* and *Blankenship*. This Ruling provides the Administration "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p, 81 Fed. Reg. at 14,170.

Though ALJ Pickett relied on Claimant's conservative treatment as part of his RFC determination, he did not expressly discuss Claimant's reasons for doing the same. Several potential reasons for Claimant's noncompliance can be found in the record. During Claimant's administrative hearing, Claimant's attorney inquired whether she was receiving any treatment for her mental health conditions, to which Claimant responded: "Yes. I go every three months to see a doctor." (Tr. 44). Shortly thereafter, Claimant's attorney asked if she was experiencing panic attacks. After Claimant responded affirmatively, her attorney probed as to how often the panic attacks were occurring. Claimant stated: "Every time I see the doctors, important phone calls, I guess. I never know when I'm going to get them." (Tr. 45).

The record is also replete with physicians diagnosing Claimant with agoraphobia, bipolar disorder, borderline personality disorder, anxiety, and depression. (Tr. 653; 732; 736; 742; 747; 752; 762; 764; 766; 768; 770; 772). APRN Williams' treatment records indicated Claimant avoids

being alone outside of the house and has "anxiety and worry about events and activities." (*Id.*). In November of 2018, APRN Samantha Richards reiterated Claimant's reported "worry about events and activities" and on objective examination noted Claimant's poor eye contact, guarded nature, minimal communication, and anxious appearance. (Tr. 761-62). During another visit APRN Richards noted on objective examination Claimant presented as downcast, with posture and attitude conveying an underlying depressed mood, and anxious, as evidenced by restlessness and fidgeting. (Tr. 764). During her first visit with APRN Amanda Medley in September of 2019, Claimant expressed "a lot of anxiety . . . that could be due to meeting a new provider[.]" (Tr. 770).

Without doubt, ALJ Pickett's finding that Claimant's reported symptoms were not consistent with the record was pervasively influenced by Claimant's perceived "conservative treatment." When considering Claimant's lower back pain, ALJ Pickett discussed that despite reporting back pain for four years, Claimant didn't see a physician or undergo imaging procedures. (Tr. 23). ALJ Pickett twice noted Claimant's refusal to attend physical therapy for her lower back. ALJ Pickett concluded that Claimant's conservative treatment, along with other factors, did not warrant additional limitations. (*Id.*).

While evaluating evidence of Claimant's mental impairments, ALJ Pickett again emphasized gaps in her treatment: "Despite claimants' allegations that mental health impairments are what prevent her from working, she has not consistently sought mental health treatment." (Tr. 24). ALJ Pickett also noted Claimant was not receiving psychiatric treatment or taking psychotropic medicine in December of 2016; did not report anxiety to her treating physician until March of 2017; and was not undergoing therapy in April of 2018 or October of 2018. (Tr. 25-26). Then, in weighing the opinion evidence of record, ALJ Pickett found four opinions were entitled

to "little weight" due in part to the opined limitations being inconsistent with Claimant's conservative treatment. (Tr. 26).

The undersigned finds the ALJ's failure to consider "possible reasons" for Claimant's conservative treatment to be harmless error. The Sixth Circuit holds that "harmless error analysis applies to credibility determinations in the social security disability context." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). If "there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal." *Id.* (quoting *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (add'l citation omitted)).

Here, ALJ Pickett did not rely only on Claimant's conservative treatment in finding Claimant's subjective statements were inconsistent. *Cf. Fischer v. Comm'r of Soc. Sec.*, 3:19-cv-771-DJH-CHL, 2021 WL 1081935, at *5-6 (W.D. Ky. Feb. 10, 2021) (reversing and remanding where ALJ's failure to "explicitly inquire into the reasons for claimant's noncompliance [with medication]" was essentially the sole basis for the ALJ's credibility determination). ALJ Pickett instead considered a host of factors, as required by SSR 16-3p. As to Claimant's allegations of lower back pain, ALJ Pickett also found the severity to be inconsistent with fairly normal treatment notes, repeated findings of normal gait, and with mild imaging findings. (Tr. 23). Similarly, ALJ Pickett found the severity of Claimant's alleged mental impairments was inconsistent with treating notes documenting improvement with medication and counseling sessions and with Claimant's consistent reports of stable and euthymic mood and effective toleration of her medication. (Tr. 25). ALJ Pickett's analysis of Claimant's subjective statements, therefore, complied with the regulations and was supported by substantial evidence.

Earlier in his decision, when evaluating whether any of Claimant's impairments met a listing from Appendix 1, ALJ Pickett considered Claimant's reports that she has difficulty dealing with people, has unstable interpersonal relationships, appears to isolate herself from others, does not like crowded places, and has panic attacks when she goes to the doctor. (Tr. 20). This evidence is what Claimant argues ALJ Pickett failed to consider as "possible reasons" for her conservative treatment. Though ALJ Pickett did not repeat this evidence verbatim in his RFC analysis, the fact that he did so in another portion of his opinion demonstrates he was aware of Claimant's social difficulties and aversion to doctors and going out in public. For these reasons, the ALJ's failure to explicitly state "possible reasons" for Claimant's conservative treatment in his credibility analysis was harmless and did not infect the validity of his credibility determination.

### C. ALJ Pickett's Evaluation of Claimant's Visual Impairments

The Appeals Council vacated ALJ Pickett's first decision and remanded Claimant's case for ALJ Pickett to resolve several issues. (Tr. 181-82). One such issue was ALJ Pickett's evaluation of Claimant's visual impairments. (Tr. 182). The Appeals Council found further analysis of Claimant's visual limitations and the residual functional capacity was required because ALJ Pickett's initial decision did not assess Claimant's ability to perform the work-related activities as outlined in Social Security Ruling 96-8p. (*Id.*). SSR 96-8p dictates an ALJ's RFC assessment for visually impaired individuals "must consider the individual's residual capacity to perform such work-related functions as working with large or small objects, following instructions, or avoiding ordinary hazards in the workplace." SSR 96-8p.

ALJ Pickett's second RFC determination limited Claimant to "work that allows for vision with only one eye (monocular vision). (Tr. 21). ALJ Pickett based this restriction on treating notes and Claimant's hearing testimony that she is blind in her right eye. (Tr. 24). After discussing treatment records relating to Claimant's visual impairments, including several surgeries, ALJ

Pickett concluded: "Based on her vision stability following surgery, the vision capabilities of her left eye and her combined vision, in addition to testimony that the claimant is capable of driving short distances," a limitation to work involving one eye is supported and consistent with the record. (Tr. 24 (citing Exs 4F, 5F, 9F, 15F)). ALJ Pickett opined no additional restrictions relating to Claimant's visual impairments.

Claimant submits ALJ Pickett failed to heed the Appeals Council's order on remand to specifically assess her visual impairments pursuant to SSR 96-8p. (*Id.*). Instead, Claimant believes ALJ Pickett improperly "played doctor" by interpreting raw medical data in the record to find she did not have limitations in her left eye. (*Id.* at PageID # 900). Claimant concludes another remand is necessary for ALJ Pickett to provide adequate explanation for his exertional capacity finding, including adequate assessment of her visual impairment. (*Id.*).

The Commissioner insists the Appeals Council's order did not direct ALJ Pickett to articulate findings on specific visual limitations. (*Id.* at PageID # 925). Instead, the Commissioner argues ALJ Pickett was required to evaluate Claimant's RFC in terms of work-related functions. (*Id.*). The Commissioner states ALJ Pickett did just that by evaluating the evidence and finding Claimant capable of performing work activities that could be done with monocular vision. (*Id.*).

Though caselaw analyzing SSR 96-8p's requirements for visually impaired individuals is sparse, the Court finds the District of New Mexico's recent decision in *Baros v. Kijakazi* helpful. No. 20-0523 KBM, 2021 WL 4444859 (D.N.M. Sept. 27, 2021). There, the court was satisfied the ALJ adequately complied with the Ruling's requirement even where "the ALJ did not directly discuss SSR 96-8p's instructions concerning vocationally-relevant vision limitations. *Id.* at *5. Specifically, the ALJ's RFC assessment revealed consideration of plaintiff's ability to navigate

hazards, given her limited peripheral vision and depth perception and plaintiff's left eye visual acuity of 20/20. *Id.*

Like in *Baros*, the undersigned here finds ALJ Pickett adequately complied with SSR 96-8p's requirements and the Appeals Council's remand order by thoroughly discussing subjective and objective evidence relating to Claimant's visual impairments. Because ALJ Pickett determined Claimant had no functional limitations relating to her left eye vision, he did not impose any work-related functions. The Court does not read SSR 96-8p to require ALJ Pickett to state verbatim functions relating to "large or small objections, following instructions, and avoiding hazards," where no such functional limitations are reflected in the record. Nor does the Court find ALJ Pickett improperly played doctor in reviewing the record evidence. For these reasons, the Court finds no legal error in ALJ Pickett's assessment of Claimant's visual impairments.

### D. ALJ Pickett's Assessment of Claimant's Exertional Limitations

Claimant lastly argues ALJ Pickett improperly increased her RFC from light work in his 2018 decision to medium work in his 2020 opinion based on a nearly identical assessment of the record evidence. (DN 20-1, at PageID # 896). Claimant asserts the only new analysis ALJ Pickett added to his 2020 decision was reference to some evidence dated October 2018 and 2019, but this evidence does not explain ALJ Pickett's change to medium exertion. (*Id.*). Although ALJ Pickett also added a single sentence in his 2020 decision, indicating he considered Claimant's obesity, Claimant maintains this addition actually supports Claimant being more exertionally limited in 2020 than she was in 2018. (*Id.* at PageID # 897-98). Claimant explains this error was not harmless because all jobs cited by the Vocational Expert as to light or sedentary work required "frequent near acuity," which Claimant could not perform. (*Id.* at PageID # 898).

The Commissioner defends ALJ Pickett was not bound by his 2018 decision because it was vacated by the Appeals Council. (DN 23, at PageID # 923-24). The expanded record at the 2020 hearing, the Commissioner explains, showed from 2018-2020 Claimant's back pain resolved with medication, she had only rare clinical abnormalities, and she declined additional treatment. (*Id.* at PageID # 924).

The Commissioner is correct; because ALJ Pickett's 2018 decision was vacated by the Appeals Council, it never became final and did not bind ALJ Pickett to any extent in rendering his 2020 decision. *See* 20 C.F.R. § 404.955(a) (ALJ's decision is "binding on all parties to the hearing unless . . . [y]ou or another party request a review of the decision by the Appeals Council within the stated time period, and the Appeals Council reviews your case"); *Wireman v. Comm'r of Soc. Sec.*, 60 F. App'x 570, 571 (6th Cir. 2003) (ALJ is not bound by any of the vacated findings of a prior ALJ's decision). Nothing prevented ALJ Pickett from assessing a different, less restrictive RFC in 2020 than he did in 2018.

Bearing this in mind, the Court finds the record as a whole, especially the expanded record following the 2018 hearing, supports ALJ Pickett's determination Claimant is capable of performing medium work with several functional limitations. ALJ Pickett highlighted records from January, April, and October of 2019 indicating Claimant's low back pain was controlled, she was compliant with medication, and she exhibited normal gait. (Tr. 23 (citing Exs. 18F, 21F). ALJ Pickett determined the fairly normal findings in Claimant's treatment notes, along with physicians' repeated findings of normal gait, Claimant's conservative treatment involving no surgery or injections, and mild imaging findings "[d]id not warrant additional limitations." (*Id.*). However, ALJ Pickett voiced his consideration of Claimant's obesity when evaluating her RFC and limited her climbing and stooping abilities. (Tr. 23-24). Though ALJ Pickett's analysis may echo his

earlier RFC determination, Claimant's continued improvement and stability on medication supports a less restrictive residual functional capacity.

Claimant's allegation that ALJ Pickett increased her RFC to medium work to avoid the jobs cited by the Vocational Expert is likewise unsupported. Claimant relies on the fact that the jobs the Vocational Expert cited for light work and sedentary work required "frequent near acuity" that Claimant could not perform. But ALJ Pickett's 2020 decision did not specifically limit Claimant's near acuity and found Claimant capable of work requiring monocular vision. As discussed above, ALJ Pickett did not err in analyzing Claimant's visual impairments. For these reasons, the Court finds ALJ Pickett's RFC determination, specifically related to Claimant's lower back impairments, to be supported by substantial evidence in the record.

## IV. Recommendation

For the above-stated reasons, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE RECOMMENDED** the Commissioner's decision be **AFFIRMED**.

July 29, 2022

Regina S. Edwards, Magistrate Judge
United States District Court

## NOTICE

Therefore, under the provisions of 28 U.S.C. " 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.  Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.  If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:      Counsel      of      Record